AMERICAN LAVA CO. *et al. v.* UNITED STATES (No. 999).[1]

TALC SAWED TO FORM AND SIZE.

    Talc and French chalk are not treated in the decisions as being the same substance. Under those decisions the classification of talc is a question of fact rather than of law, the classification to be determined by the evidence in the particular case. The evidence here on review would make it appear there are two varieties of talc, one crystalline and the other massive—that is, French chalk—and that these commercially are different articles with different uses. The talc of the importation at the port of New York had been sawed to a form and size convenient for the economical manufacture of gas burners and electric insulators, and being a mineral advanced in value and condition was dutiable at 20 per cent ad valorem as articles partly manufactured and not provided for under section 6, tariff act of 1897, and paragraph 480, tariff act of 1909. There was no evidence to support the protest of the American Lava Co., and the collector's finding is sustained.

## United States Court of Customs Appeals, February 1, 1913.

APPEAL from Board of United States General Appraisers, Abstracts 29454 and 29500 (T. D. 32760).

[Reversed as to part, affirmed as to part.]

*Brown & Gerry* for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, AND MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

    Talc sawed into pieces of different sizes was imported by the American Lava Co. at the port of Chattanooga and by Kraemer & Foster and L. Blanc Walther at the port of New York. With the exception of some consignments imported under the tariff act of 1897 by L. Blanc Walther and the American Lava Co., all of the importations came into the country subsequent to the passage of the tariff act of 1909. The talc imported by Kraemer & Foster and L. Blanc Walther was classified by the collector of customs at New York as French chalk and assessed for duty at 1 cent per pound either under paragraph 13 of the tariff act of 1897 or under paragraph 13 of the tariff act of 1909, as the date of importation might determine. The talc imported by the American Lava Co. was classified by the collector at Chattanooga as steatite blanks or soapstone and assessed for duty at 35 per cent ad valorem under the provisions of paragraph 95 of the tariff act of 1909. The paragraphs under which the collector made his classification and assessment of the goods read as follows:

*Tariff act of 1897.*

13. Chalk (not medicinal nor prepared for toilet purposes), when ground, precipitated naturally or artificially, or otherwise prepared, whether in the form of cubes, blocks, sticks or disks, or otherwise, including tailors', billiard, red, or French chalk, one cent per pound. Manufactures of chalk not specially provided for in this act, twenty-five per centum ad valorem.

---

[1] Reported in T. D. 33169 (24 Treas. Dec., 182).

*Tariff act of 1909.*

13. Chalk, when ground, bolted, precipitated naturally or artificially, or otherwise prepared, whether in the form of cubes, blocks, sticks or disks, or otherwise, including tailors', billiard, red, or French chalk, one cent per pound; manufactures of chalk not specially provided for in this section, twenty-five per centum ad valorem.

95. Articles and wares composed wholly or in chief value of earthy or mineral substances, not specially provided for in this section, whether susceptible of decoration or not, if not decorated in any manner, thirty-five per centum ad valorem; if decorated, forty-five per centum ad valorem; carbon, not specially provided for in this section, twenty per centum ad valorem; electrodes, brushes, plates, and disks, all the foregoing composed wholly or in chief value of carbon, thirty per centum ad valorem.

The official classification of the goods and the duties imposed thereon did not meet with the approval of the importers and accordingly they filed formal protests in which various grounds of objection were offered to the collector's action. L. Blanc Walther and Kraemer & Foster claimed, among other things, that the merchandise was dutiable as a crude mineral or as a nonenumerated article manufactured in whole or in part. The American Lava Co. confined its protest to the claim that the goods were dutiable at 20 per cent ad valorem as articles manufactured in whole or in part and not provided for.

The protests upon which the several importers really relied were based on the following provisions of the tariff acts of 1897 and 1909:

*Tariff act of 1897.*

614. Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for in this act. (Free list.)

SEC. 6. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this act, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this act, a duty of twenty per centum ad valorem.

*Tariff act of 1909.*

480. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles, not enumerated or provided for in this section, a duty of ten per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of twenty per centum ad valorem.

626. Minerals, crude, or not advanced in value or condition by refining or grinding, or by other process of manufacture, not specially provided for in this section. (Free list.)

The Board of General Appraisers overruled all of the protests, and the importers appealed.

The merchandise imported by L. Blanc Walther and by Kraemer & Foster was returned by the appraiser at the port of New York as French chalk, and this return was confirmed by the deputy appraiser, who reported that the importation consisted of pieces of French chalk sawed to regular sizes and dutiable at 1 cent per pound under paragraph 13. The goods imported by the American Lava Co.

were returned by the appraiser at the port of Chattanooga as steatite blanks or soapstone, dutiable at 35 per cent ad valorem under paragraph 95.

The classification of talc is not a new question. Indeed, it is one which has been frequently considered by the Board of General Appraisers and by the courts, but apparently without much uniformity of result. Sometimes such merchandise has been classified as French chalk, sometimes as a nonenumerated article manufactured in whole or in part, and sometimes as an undecorated ware composed of mineral substances.

In the matter of the protest of Geo. W. McNear (T. D. 24864, decided Dec. 30, 1903), ground talc was classified by the collector as "ground French chalk," and duty was accordingly assessed on the merchandise at 1 cent per pound under the provisions of paragraph 13 of the tariff act of 1897. In that case the importer claimed that the merchandise was dutiable at 20 per cent ad valorem as a nonenumerated manufactured article under the provisions of section 6 of said act. The merchandise was analyzed by the Government chemist at San Francisco and was returned by him as "ground French chalk." The Government chemist at the port of New York reported that it was "steatite (talc) powdered," and that the term "French chalk," as used in technical works, was synonymous with steatite or soapstone and signified, without limiting or qualifying words, French chalk in pieces suitable for marking clothing. The board approved the findings of the chemist at the port of New York and, deciding that the restriction of the term to the article used by tailors for marking clothing was borne out by the language of paragraph 13, sustained the protest on the ground that the merchandise was a nonenumerated manufactured article dutiable at 20 per cent ad valorem under section 6.

In Abstract 14620 (T. D. 27968) the D. M. Stewart Manufacturing Co. protested that pieces of talc sawed to uniform size and used for the manufacture of gas tips or burners were dutiable under section 6 of the tariff act of 1897 as nonenumerated manufactured articles not provided for, and that the merchandise was improperly classified as undecorated wares composed wholly or in chief value of mineral substances, dutiable under paragraph 97 of said act. The protest of the company was sustained by the board.

In Abstract 15932 (T. D. 28300) the Illinois Central Railroad claimed that soapstone cut into the form of half cubes with smooth surfaces and classified as "articles" composed of mineral substances was lava, free of duty as a crude mineral under paragraph 614 of the tariff act of 1897. The board decided that as the goods had been advanced in value and condition they did not come within the free-list provision. As the importer made no other claim the classification of the collector was sustained.

The same decision was made in Abstract 16038 (T. D. 28300), on the protest of M. Kirschberger & Co.

These decisions of the board were followed by the ruling in Doggett's case, which was made on September 19, 1907, and reported in T. D. 28425. In that case the goods imported were irregular pieces of sawed talc, about 5 inches long, varying in width and thickness, and used by ironworkers to mark iron. The collector of customs classified the goods as undecorated articles or wares composed of mineral substances, dutiable at 35 per cent ad valorem under the provisions of paragraph 97 of the tariff act of 1897. Stanley Doggett, the importer, claimed that the goods were either free of duty under paragraph 614 as a crude mineral not advanced in condition, or dutiable at 20 per cent ad valorem as a nonenumerated manufactured article under section 6, or at 1 cent per pound as French chalk under paragraph 13. *The uncontradicted testimony in that case was to the effect that the talc in the form in which it was imported was the same as French chalk and that in fact there was no difference between the article imported and French chalk.* On this state of the record the board sustained the protest and directed the collector to assess duty on the merchandise as "French chalk" at 1 cent per pound under paragraph 13.

In December, 1907, only a few months later, the board was again called upon to classify sawed pieces of talc imported by Kirschberger & Co., which had been assessed for duty under paragraph 97 of the tariff act of 1897 as undecorated wares composed of mineral substances. In that case the collector submitted to the board a letter expressing his willingness to reliquidate the entries and to classify the merchandise under section 6 in accordance with the ruling in Stewart's case. The board expressed some doubt as to whether Stewart's case or Doggett's case should be followed, but in the end resolved to follow the collector's recommendation, inasmuch as it had no expert knowledge of the merchandise, and accordingly the talc was assessed as a nonenumerated manufactured article. Abstract 17628 (T. D. 28597).

There seems to have been no further trouble touching the classification of sawed talc until November 28, 1908, when the board was once more required to determine the tariff status of small pieces of "soapstone," cut into regular sizes and used for the manufacture of gas burners. These goods were assessed for duty at 35 per cent ad valorem under the provisions of paragraph 97 of the tariff act of 1897 as undecorated articles or wares composed of mineral substances. Kirschberger & Co., the importers, claimed among other things that the merchandise should be classified as a nonenumerated manufactured article, dutiable at 20 per cent ad valorem under section 6 of said act. The board overruled the protest and the importer appealed. On appeal, Judge Martin, sitting in the Circuit Court for the Southern District of New York, reversed the decision of the board and held the goods to be dutiable at 20 per cent ad valorem under section 6 as manufactured articles not provided for (T. D. 29391).

Following the decision of Judge Martin came Abstract 21245 (T. D. 29763), in which the board held, on May 13, 1909, that talc sawed into pieces of convenient form for the manufacture of gas burners and electric insulation was substantially the same merchandise as the pieces of sawed talc in the Doggett case, and that it was therefore dutiable as "French chalk." The decision in this case was affirmed by the Circuit Court for the Southern District of New York in Kraemer & Foster v. United States (180 Fed., 639). An appeal from the decision of the Circuit Court was subsequently taken to this court, but before the appeal was heard a stipulation was made between the parties, as a result of which an order of reversal was entered and the merchandise held dutiable at 20 per cent ad valorem as a nonenumerated manufactured article.

A careful examination of these cases leads us to conclude that the classification of sawed talc was determined in each instance by the particular evidence submitted and that there was no intention on the part of the board or courts to lay down a general rule which would classify all talc as French chalk. In fact, we think that French chalk can not be regarded as another name for talc without bringing the decisions cited into hopeless conflict. In our opinion, if the adjudicated cases are to be reconciled at all it must be on the theory that French chalk is a special kind of talc, and that special kind of talc, by the way, which is used by tailors for marking clothing.   Salamon v. United States (2 Ct. Cust. Appls., 92, 94; T. D. 31635). As it has not been judicially determined that talc and French chalk are equivalent designations for the same thing, it follows that the classification of talc in this case is more a question of fact than of law, and that the tariff status of the importations here in controversy must be settled by evidence rather than precedent.

On the hearing of the issues raised by the protests of Walther and Kraemer & Foster no original testimony was submitted by the importers or presented on behalf of the Government.   In lieu of such testimony the declarations under oath of Clarence Starr Steward, a witness on the trial of a previous protest of Kraemer & Foster (Abstract 21245, T. D. 29763), was, with the consent of the Government, offered and received in evidence in support of the contentions of the protestants.   The testimony of Steward was not offered on the hearing of the protests of the American Lava Co., and, so far as the record discloses, those protests were submitted on the official samples and the return of the appraiser.   Whether the merchandise to which the witness Steward directed his testimony was the same as that now involved in the appeals of Walther and Kraemer & Foster is not made as clear by the record as it might be.   Taking into consideration, however, that the merchandise was found by the board to be identical in both cases; that that finding is borne out by the appearance of the samples; that the Government consented to

the admission of Steward's testimony, and that no question is raised by either side as to the relevancy or materiality of the evidence, we assume, for the purposes of this appeal, that the merchandise put in controversy by the protests of Walther and Kraemer & Foster is identical with that to which Steward testified in Abstract 21245 (T. D. 29763). From the testimony of Steward, as set out in the record, it appears that the merchandise is talc, which in its natural state is found between walls of dolomite or serpentine rock. After displacement the talc is subjected to a sawing process which has for its purpose not only a saving in the cost of transportation by separating the talc from the adhering pieces of country rock, but also the cutting of the talc to a form and size best suited and most convenient and economical for use in the manufacture of gas burners and electric insulation.

Steward also stated that the talc used for the manufacture of gas burners and electric insulation has a crystalline structure, which makes it commercially unfit for marking purposes or for the making of articles which would serve the uses of French chalk; that crystalline talc wears rapidly when brought in contact with rough surfaces; and that it is easily broken and must be repointed frequently, even when made up into a pencil a quarter inch round. Steward further declared that French chalk is a variety of talc which is massive, not crystalline, and which when made up into pencils for marking purposes does not require frequent pointing and is not readily broken. According to Steward a talc which is not massive is not French chalk and can not be commercially used for the purposes of a French chalk. If the testimony of the witness is to be accepted as true, crystalline talc and French chalk differ not only in structure but in other physical qualities as well. Pulverized French chalk makes a white powder, while that secured from crystalline talc is darker in color. French chalk hardens uniformly at the same degree of heat, and articles made from it do not require rebaking. Crystalline talc does not harden so evenly, and frequently wares made out of it must be given a second firing in order to bring them to the requisite degree of hardness. We infer from the statements of the witness that French chalk is the superior article. At all events it commands a very much higher price than crystalline talc.

The credibility of Steward as a witness was not impeached on the hearing before the board, and so far as we can find his testimony was not questioned or contradicted. We must therefore conclude, on the evidence submitted, that there are two varieties of talc, one crystalline and the other massive, and that commercially they are different articles with different uses. As the tariff act provides for French chalk and not for talc and manufactures thereof, and as French chalk is a distinct kind of talc suitable for uses for which the

crystalline varieties are not fitted, we must hold that the importation can not be classified either *eo nomine* or by similitude as French chalk.

The talc imported by Walther and by Kraemer & Foster is not a crude mineral. It has been sawed to a form and size convenient for the economical manufacture of gas burners and electric insulation, and consequently must be classed not as a crude mineral, but as a mineral advanced in value and condition.

The goods are dutiable at 20 per cent ad valorem as articles partly manufactured and not provided for. The decision of the Board of General Appraisers overruling the protests of L. Blanc Walther and Kraemer & Foster is therefore *reversed*.

As no evidence was introduced in support of the protests of the American Lava Co. we must accept the classification of the collector of customs as correct, and as to those protests the decision of the Board of General Appraisers is *affirmed*.